UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert K. Murphey, Jr.,

Plaintiff,

v.

Civil No. 01-10 (JNE/JGL)
ORDER

City of Minneapolis,

Defendant.

---

James G. Ryan, Esq., James G. Ryan Law Office, appeared for Plaintiff Robert K. Murphey, Jr.

Caroline M. Bachun, Esq., Minneapolis Office of the City Attorney, appeared for Defendant City of Minneapolis.

---

Robert K. Murphey, Jr. initiated this action against his former employer, the City of Minneapolis (City), under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2000) (ADA). On September 27, 2002, this Court granted the City's motion for summary judgment, holding that there was no genuine issue of material fact as to whether Murphey could perform the essential functions of his job with or without reasonable accommodations. The Court's based its decision on its reading of *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), and on the Court's conclusion that Murphey had failed to provide an explanation as to the alleged inconsistency between his ADA claim and his application for permanent disability benefits from the Public Employees Retirement Association, Minn. Stat. § 353.33 (2000) (PERA). Given this conclusion, the Court did not reach the parties' remaining arguments.

Murphey appealed the September 27 Order to the Eighth Circuit Court of Appeals. By Order dated February 26, 2004, the Eighth Circuit reversed and remanded the case for further

consideration. Specifically, the Eighth Circuit concluded that this Court erred in applying *Cleveland* and that "there is no inconsistency between Murphey's successful application for and receipt of PERA disability benefits and his ADA claim that he could perform the essential functions of his job, with or without reasonable accommodations." *Murphey v. City of Minneapolis*, 358 F.3d 1074, 1080 (8th Cir. 2004). The Court now considers the parties' remaining arguments. For the reasons set forth below, the Court denies the City's motion for summary judgment.

## I. BACKGROUND[1]

Murphey began working for the City in June of 1971 as a seasonal laborer. In November 1977, Murphey injured his lower back on the job and was off work for a period of five years. He returned to work for the City in the summer of 1983. In 1987, 1995, and 1996, Murphey re-injured his lower back by lifting heavy objects. In May 1997, Murphey again re-injured his lower back and was absent from work for three or four weeks. Following this injury, he was placed under certain medical restrictions, including a lifting restriction of 20 pounds, bending restrictions, and a restriction prohibiting prolonged sitting or standing. Murphey returned to work in June 1997 and worked part time as a painter's assistant until October 1997, when he was placed on workers' compensation. He returned to work in the spring of 1998 to work in the Finance Department for a few hours per day, and later he began doing light janitorial duties for the Lands and Buildings Department. After six to eight weeks with that department, he refused to do further duties because the work irritated his back injury.

1 The facts of the case are more fully set forth in the Court's September 27, 2002 Order and the Eighth Circuit's February 26, 2004 Order.

On October 13, 1998, Murphey met with a human resources generalist for the City about entering the City's Return to Work Job Bank Program (Job Bank). The Job Bank is a program designed to help injured employees secure City employment that can be performed within the employee's medical restrictions. If the City is unable to find another position for an injured employee within 120 days, the City terminates the employee. Murphey refused to enter the Job Bank, a decision that led the City to discontinue Murphey's workers' compensation benefits. Murphey appealed the decision, and later, he and the City entered into a Stipulation of Settlement related to his workers' compensation claim. As part of the settlement, Murphey agreed that he would enter the Job Bank after completion of a chronic pain management program. After he completed a chronic pain management program, the City offered Murphey a temporary position as an Engineering Aide I in July 1999, and he was able to work in that capacity for four hours per day.

On October 15, 1999, Murphey and his attorney met with various City officials to discuss Murphey's status as an Engineering Aide I. Murphey left the meeting believing he had secured a permanent job as an Engineering Aide I; therefore he presumed that because he had found a permanent job within 120 days of entering the Job Bank, he no longer faced termination under the Job Bank rule. However, by letter dated November 3, 1999, the City informed Murphey that he had been released from City service because his injury and resulting restrictions did not allow him to return to his pre-injury position and because no other appropriate position was available. Murphey immediately called the City to ask why he had received the letter, and he was informed that there had been a mistake. However, the City never took any action to reverse the termination letter, and Murphey officially ended his work with the City on November 30, 1999.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To analyze claims brought under the ADA, courts utilize the well-known burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Wilking v. County of Ramsey*, 153 F.3d 869, 872 (8th Cir. 1998). The parties agree that to establish a prima facie case claim under the ADA, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) he suffered adverse employment action because of his disability. *Alexander v. Northland Inn*, 321 F.3d 723, 726 (8th Cir. 2003). The threshold of proof necessary to establish a prima facie case is minimal. *Young v. Warner-Jenkinson Co., Inc.,* 152 F.3d 1018, 1022 (8th Cir. 1998). Once the plaintiff establishes his prima facie case, "the burden shifts to the employer to articulate some legitimate,

nondiscriminatory reason for its actions." *Wilking*, 153 F.3d at 872-73. If the employer meets this burden, the plaintiff then bears the burden of demonstrating that the employer's stated reason is pretextual for discrimination. *Id*. at 873. At all times, the plaintiff bears the ultimate burden of demonstrating that discrimination was the real reason for the employer's actions. *Id.*

The City asserts that it is entitled to summary judgment because Murphey cannot establish a prima facie case of discrimination and because he cannot show that the City's proffered reasons for its actions were pretextual. The Court will consider each of the City's arguments in turn.

**A. Disability Under the ADA**

The first element of the prima facie case is whether Murphey is disabled within the meaning of the ADA. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning, working, sitting, standing, lifting, and reaching. 29 C.F.R. § 1630.2(j); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997). An impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). The Eighth Circuit has explained that the following factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term

impact. *Fjellestad v. Pizza Hut of Am., Inc.*,, 188 F.3d 944, 949 (8th Cir. 1999). The determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis. *Id*.

The City concedes that Murphey has a physical impairment that requires restrictions to be placed on his sitting, standing, lifting, and performing manual tasks, all of which the City acknowledges to be major life activities. Nonetheless, it asserts that Murphey is not disabled within the meaning of the ADA because his restrictions allow him to substantially perform those major life activities. In response, Murphey asserts that he is disabled within the meaning of the ADA because the restrictions substantially limit his ability to perform major life activities and because his restrictions disqualify him from a majority of jobs he would otherwise have been able to perform.

It is undisputed that Murphey's doctors have, among other things, imposed a three-hour restriction on standing, three-to-four hour restriction on sitting, and numerous lifting restrictions based on weight. Viewing this evidence in the light most favorable to Murphey, these medical restrictions create a triable issue of fact as to whether his impairments have significantly restricted the condition, manner, or duration in which he can work as compared to an average person in the general population. *See Fjellestad*, 188 F.3d at 950. Accordingly, the Court denies the City's motion with respect to the first element of Murphey's prima facie case.

**B. Qualified Individual/Reasonable Accommodation**

The next element in the prima facie case is whether Murphey is qualified to perform the essential functions of his job with or without reasonable accommodations. This determination involves a two-part test: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform

the essential job functions, with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111-12 (8th Cir. 1995). "Although an ADA plaintiff retains the ultimate burden of proving that he is a qualified individual, an employer who disputes the plaintiff's claim that he can perform the essential functions must put forth evidence establishing those functions." *Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675, 680 (8th Cir. 2001).

The City asserts that Murphey cannot meet his burden with respect to this element because he cannot demonstrate that he was qualified for the multiple jobs that he applied for or that he could perform the essential functions of those jobs, with or without reasonable accommodations. In response, Murphey maintains that he was qualified for the various positions and that he could perform the essential functions of those jobs. He explains that his numerous years of experience with the City qualified him for his position as Engineering Aide I, and he points to testimony in the record from a City employee that shows that Murphey was qualified for numerous other positions such as a utility driver, painter's assistant, or grade setter. Moreover, he notes that immediately prior to his termination, his superiors told him that he was doing an "excellent" job as a Engineering Aide I. Viewing this evidence in the light most favorable to Murphey, a reasonable fact-finder could conclude that Murphey was qualified for the Engineering Aide I position or the other positions he applied for and that he was able to perform the essential functions of those jobs. *See e.g., Benson,* 62 F.3d at 1112-14 (concluding that genuine issues of material fact remained as to whether the plaintiff was qualified to perform the essential functions of his job). Accordingly, the Court denies the City's motion with respect to this element of Murphey's prima facie case.

**C. Adverse Employment Action**

The final element of Murphey's prima facie case involves an adverse employment action. "An adverse employment action is one that causes a material change in the terms or conditions of employment." *Fenney v. Dakota, Minn. & E. R. Co.*, 327 F.3d 707, 716 (8th Cir. 2003). Termination is the "quintessential" adverse employment action. *See Hoang v. Seagate Tech., LLC*, Civ. No. 03-3090, 2004 WL 2066828 at *4 (D. Minn. Sept. 3, 2004) (employing *McDonnell Douglas* in a racial discrimination context). Nonetheless, the City asserts that Murphey cannot establish that he suffered an adverse employment action because Murphey cannot demonstrate that he was terminated *because of* his disability. The Court's review of the record reveals that Murphey was terminated by letter dated November 3, 1999. In that letter, the City stated that it was releasing Murphey from his City employment "on the basis that your injury and resulting restrictions have not allowed you to return to your pre-injury position and no appropriate position has become available." Under the minimal threshold required at this stage, Murphey has established that he suffered an adverse employment action because of his disability. *See e.g., Heisler v. Met. Council*, 339 F.3d 622, 632 (8th Cir. 2003). Accordingly, the Court denies the City's motion with respect to this element of the prima facie case.

**D. Pretext**

Assuming that Murphey can establish a prima facie case, the City argues that it is nonetheless entitled to summary judgment because Murphey cannot establish that the City's reasons for Murphey's termination were pretextual, which is the final step in the *McDonnell Douglas* analysis. In advancing this argument, however, the City fails to meet its own burden in the second step of the *McDonnell Douglas* analysis of showing that it had a legitimate, nondiscriminatory reason for terminating Murphey. *See Wilking*, 153 F.3d at 872-73. The Court

therefore cannot reach the City's arguments with respect to pretext. Accordingly, the Court denies the its motion for summary judgment.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant Minneapolis's Motion for Summary Judgment [Docket No. 11] is DENIED.

Dated: November 23, 2004

s/Joan N. Ericksen _______
JOAN N. ERICKSEN
United States District Judge