UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert K. Murphey, Jr.,

Plaintiff,

vs.

City of Minneapolis,

Defendant.

Civil File No. 01-10 (DSD/JMM)

DEPOSITION OF

EDWARD BACKSTROM

DECEMBER 21, 2001

9:35 A.M.

DIANE M. PREECE, RPR
KINSELLA, HARTIGAN & KELZER, INC.
632 Norwest Midland Building
Minneapolis, Minnesota 55401
Telephone (612) 339-6132
Facsimile (612) 339-1986

Page 14

Q. How long was that meeting?
MS. BACHUN: Again objection. It's not likely to lead to any discoverable evidence that will be able -- you will be able to use in court. I think that's improper. Why don't we go on.
MR. RYAN: It's not improper.
Q. How long did you meet with her yesterday?
**A. I believe -- as to what? The deposition?**
Q. To prepare for the deposition.
**A. Approximately an hour.**
Q. Okay. Mr. Backstrom, I'm showing you what's been marked in previous deposition as deposition Exhibit 19. Let me ask you if you've seen that before.
**A. Not that I recall.**
Q. All right. It's been established at prior testimony -- and it is undisputed, I think.
Ms. Bachun, would you agree that this is a letter of November 3rd, 1999, informing Mr. Murphey that his employment by the City of Minneapolis has ended? Would you agree with that, Ms. Bachun?
MS. BACHUN: I would object to any questions that you would ask of this witness

Page 15

regarding this exhibit based on foundation. He has stated he has never seen this document before, and the prior testimony stands.
BY MR. RYAN:
Q. All right. Mr. Backstrom, the only reason I'm showing you this document is for you to place in time Mr. Murphey's termination. I will represent to you that it is undisputed in this case that this is the letter used by the City of Minneapolis to inform Mr. Murphey that his employment by the city was terminated, and it's dated November 3 of 1999. Just giving you that information so you can put various items in chronological order in your mind in responding to subsequent questions.
MS. BACHUN: So your questions will be assuming that he was terminated on November 3rd, 1999, here are the questions? Is that what you were stating here?
MR. RYAN: I think that's what I stated, yes.
MS. BACHUN: Okay.
BY MR. RYAN:
Q. Prior to November 3rd, 1999, what involvement did you have with the Robert Murphey case?

Page 16

MS. BACHUN: Objection. Attorney/client privileged information. You need to make -- you need to have more specific questions. It's very vague. You're talking about an attorney who works for the City of Minneapolis. You need to have specific questions.
MR. RYAN: I'll ask the question again.
Q. I haven't asked anything that has requested you to reveal an attorney/client communication. We haven't even established that you've had any such communications with anyone.
I'm asking you, in general -- you testified earlier that you transferred into worker's comp duties in October of 1999. Correct?
**A. Yes.**
Q. This letter is dated November 3rd of 1999, a short time later. Is that a fair characterization?
**A. Yes.**
Q. All right. Let me ask you this. Did you have any involvement with anything pertaining to Robert Murphey prior to your October 1999 transfer or shift in duties to worker's comp duties?

Page 17

MS. BACHUN: Again I'll object as to attorney/client privileged information.
**A. I don't recall.**
Q. Well, prior to October of 1999, you were handling, as I understood it, matters of civil litigation with a concentration on civil rights litigation and some employment litigation. Is that a fair characterization of your prior description of your pre-October 1999 duties for the prior five to seven years?
**A. Yes, but there was a period where I was being sort of trained in this worker's comp where it wasn't my responsibility. Mr. Abramson was still there.**
Q. All right. Thank you. Okay. What period of time did that cover, if you recall?
**A. It started in September.**
Q. All right. Is it fair to say, then, that any involvement you might have had in the Robert Murphey case prior to October of 1999 would have been confined to this training-in period in September?
**A. I don't know. I can't remember anything about Mr. Murphey in that time period.**
Q. Okay. Or prior to September of '99. Is that

Page 18

fair?
A. That's correct.
Q. All right. Beginning in September of 1999 -- I'm not asking you about any attorney/client communications here. I'm asking about any other involvement that you might have had with the Robert Murphey case beginning in September of 1999 up to and including his termination on November 2nd of 1999.
MS. BACHUN: Again I'd like to object. Attorney/client privilege. If he -- he was the attorney for the City of Minneapolis. If he had any involvement, it would have been as an attorney. So I do object to that as attorney/client privileged, and I do again ask you to come up with some more specific questions related to this case.
BY MR. RYAN:
Q. Is it your position, Mr. Backstrom, that absolutely every involvement, every conversation you had with anyone pertaining to Mr. Murphey is protected by attorney/client privilege?
MS. BACHUN: Objection. Vague.
THE WITNESS: Well, I'll try to answer that.

Page 19

**A. The only conversations I had concerning Mr. Murphey were attorney/client privileged other than a meeting that I had in October that I was at, and there was a hearing that I attended concerning Mr. Murphey.**
Q. All right. Do you recall when that meeting was?
**A. Not specifically, no.**
**(Exhibit 38 marked.)**
Q. Mr. Backstrom, I'm handing you what's been marked deposition Exhibit 38. Do you recognize that document?
**A. Not today I don't, no.**
Q. Okay. It appears to be a letter dated October 12, 1999, from Nancy Ross to an attorney named Thomas Mottaz. Have I characterized that accurately?
**A. Yes.**
Q. Under the cc section, does your name appear there?
**A. Yes, it does.**
Q. Okay. Does that suggest to you, given your experience at the city, that more likely than not you would have received a copy of this letter?
**A. I don't have any independent recollection of**

Page 20

receiving it at this time. I don't know if I did or not.
Q. Let me try it again. Given your experience with the city, when you're listed in the cc section of the letter written by a city employee, is it your belief the normal procedure of the city, if carried out, would have resulted in your receiving a copy of the letter?
MS. BACHUN: Objection. Speculation and foundation.
BY MR. RYAN:
Q. You can answer.
A. I'll answer it this way. I believe this is the meeting that I was talking about, so -- and I was there. So I don't know if I got it from this letter or from some other source.
Q. All right. Could you just read to yourself the first sentence of the letter, and tell me whether or not this refreshes your recollection as to when the meeting occurred.
A. I know it was in October. I don't remember the specific date.
Q. All right. Do you recall who attended that meeting?
A. The only people I remember attending were Tom

Page 21

Mottaz, who I've had dealings with since, Nancy Ross and Robert Murphey. There were other people there, but I don't know who they were.
Q. Does looking at the list of cc's refresh your recollection at all as to others who attended the meeting?
A. No.
Q. Do you recall what the purpose of the meeting was?
A. It was to discuss something dealing with his worker's compensation claim.
Q. Do you recall how long the meeting lasted?
A. No.
Q. Can you give me a range beginning with shortest it could have lasted and the longest it could have lasted?
A. No.
Q. It could have been 12 hours or 30 seconds?
A. I don't recall how long it lasted.
Q. So what I said is accurate? Could have been ten hours or 30 seconds. Is that true?
A. As I said, I don't remember how long it lasted.
Q. Did you take any notes at this meeting?
A. No.
Q. Did you speak at the meeting?

Page 22

A. I don't recall anything that I said at this time.
Q. Is there any document or any other item that you're aware of now that could refresh your recollection?
A. No, not that I'm aware of.
Q. Do you recall how the meeting began or who started speaking?
A. I don't remember much about the meeting. I remember Nancy Ross saying hello to Robert Murphey when he came in.
Q. Do you recall -- usually at a meeting like that someone is responsible for arranging it and assumes responsibility for getting it started. Do you recall who that was?
MS. BACHUN: Objection. Assumes facts not in evidence.
BY MR. RYAN:
Q. You can answer.
A. It was a pretty informal meeting. I don't think there was any structure, as I recall, and I don't recall anyone calling it to order. I just don't remember.
Q. Okay. Do you recall anything else Nancy Ross said at this meeting?

Page 23

A. Specifically what she said?
Q. Yes.
A. I don't remember any specifics, no.
Q. Okay. You recall her speaking, but you don't remember the content of her statements. Is that fair?
A. The only thing I remember her saying is saying hello to Robert Murphey.
Q. Okay. Well, this was an informal meeting, then. Do you recall Robert Murphey saying anything at this meeting?
A. I don't remember. I'm sure he said something but -- no, I'm not sure he said something. I can't remember what he said.
Q. How about Tom Mottaz?
A. I think there was some discussion about getting a new QRC, but I don't remember specific -- that he was unhappy with Richardson.
Q. Mottaz said that he was unhappy with --
A. Well, I don't remember what his exact words were. That's the gist of what I remember, that nobody was happy with Richardson.
Q. Okay. Is it your recollection as you sit here today that that was the primary topic discussed at this meeting?

Page 24

A. That's all I remember. I don't know if other things were discussed or not.
Q. Okay.
A. Or I don't remember at this time.
Q. Okay. And you said you thought there were other people at this meeting, but you cannot now recall whom?
A. I know there were other people, but I don't know who they were at this time. I believe I was introduced to them. I'd never -- basically I'd never seen them before, and I'd never worked with them.
Q. Is it your recollection that these other folks were city employees?
A. I don't remember.
Q. Do you remember anything said by any of these other people that we haven't discussed so far by name, anything that they said or topics they brought up?
A. No.
Q. All right. Just so that I understand, and correct me if I'm wrong, all you recall about this meeting is that there was some discussion of the current QRC assigned to Robert Murphey's case and a general agreement that everyone

Page 25

wanted a different one. Is that true?
A. That I vaguely remember.
Q. All right. And you do not recall anything else having been discussed or what anybody else said at this meeting?
A. I don't remember anything that was specifically said at the meeting.
Q. All right. What is it you remember that was generally said at the meeting?
A. I can't -- at this point, I'm having trouble remembering.
Q. Okay. And I just, for purposes of closure, want to ask you a similar question to one I asked you earlier. Is there anything you can think of, document, anything else, that would refresh your recollection as to what was said at this meeting?
A. A document? I can't think of any document. I don't know if it would refresh my recollection if I actually spoke with the people at the meeting, which I haven't done, about what was said at the meeting. I don't know if that would refresh my recollection or not, but at this point I don't remember.
Q. Do you have any recollection of the outcome of