UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - -

Robert K. Murphey, Jr.,

Plaintiff,

vs.

City of Minneapolis,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - -

Civil File No. 01-10 (JNE/JGL)

**PLAINTIFF'S AMENDED AND SUPPLEMENTAL JURY INSTRUCTIONS AND SPECIAL VERDICT**

On March 25, 2005, the plaintiff filed his proposed jury instructions and special verdict based upon the *Eighth Circuit Manual of Model Jury Instructions – Civil* (April, 2001). Based upon the evidence received the first three days of trial and upon the Court's ruling that the Jury will decide future PERA losses and will be instructed not to consider worker's-compensation and VA benefits, the plaintiff supplements and amends that submission with the attached. The changes made from the original submission are as follows:

- **Preliminary Instructions Prior to Instruction 3.01 Deleted as Moot**
- **5.51A ADA – Discriminatory Discharge – Essential Elements (First Claim)**

  [Supplemental Authorities added]
- **5.51C ADA – Reasonable Accommodation (Second Claim)**

  [Amendments to body of instruction to conform to the evidence received and to incorporate "good-faith"element in third element]
- **"Reasonable Accommodation" Defined**

  [Addition of definition of "reasonable accommodation"; to be inserted after Instruction 5.51C]

- **ADA – Failure to Engage in Interactive Process in Good Faith (Third Claim)**

  **[Delete –** now covered in Amended Instruction 5.51C – ADA – Reasonable Accommodation, above]

- **5.54 Actual Damages**

  [Amendments to body of instruction to conform to the evidence received, and to instruct the jury not to consider worker's-compensation or VA benefits]

- **Present Value of Future PERA Benefits Lost**

  [Addition of instruction based on Court's ruling on first day of trial that the jury will determine future PERA losses, and based on defendant's instruction on Present Value, modified to fit the evidence received and the nature of the loss claimed by the plaintiff]

- **Special Verdict**

  [Amended to conform to the evidence received, to add question on loss of future PERA losses, and to delete Questions 3 and 3a]

**All instructions in the March 25th filing not amended or deleted herein remain part of the plaintiff's proposed instructions.**

Respectfully submitted,

Dated: April 17, 2005

*/s/ James G. Ryan*

James G. Ryan
Attorney Reg. No. 155962
820 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 338-3872
Attorney for Plaintiff

***AMENDED 04-17-05***

**5.51A ADA - DISCRIMINATORY DISCHARGE - ESSENTIAL ELEMENTS**

**(FIRST CLAIM)**

The plaintiff's first claim is one for discharge based on disability. Your verdict on this claim must be for plaintiff and against defendant if all of the following elements have been proved by the greater weight of the evidence:

First, plaintiff had a disability as defined above; and

Second, the defendant discharged plaintiff; and

Third, plaintiff could have, with or without reasonable accommodation, performed the essential functions of either the Engineering Aide I position he was performing at the time he was discharged or the essential functions of another laborer position with the City; and

Fourth, plaintiff's disability was a motivating factor in defendant's decision to discharge him.

If any of the above elements has not been proved by the greater weight of the evidence, then your verdict must be for defendant on this claim.

**Additional Authority:**

**For the third element – ADA definition of "qualified individual with a disability"**

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual *holds or desires*. (42 U.S.C. §12111[8]; emphasis added.)

***Supplemental Authorities for the third element added 04-17-05:***

1. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108 (8th Cir. 1995)

   - Plaintiff injured while working as a mechanic reconditioning aircraft
   - Upon return to work, was transferred to the Recycling Unit for light duty due to his restrictions
   - "Bumped" by a more senior employee, and was put into the position of a "plant maintenance mechanic" serving as a "dispatcher for other mechanics"
   - Four days later, was placed on a leave of absence and told he had 90 days to find another position or be terminated
   - Terminated 90 days later; sued under ADA
   - Summary Judgment for the Defendant, with the District Court ruling:
     + Plaintiff had to show he could perform the essential functions of the original mechanic position but it was clear he could not
     + Showing he could perform the essential functions of the two "temporary" positions in Recycling and/or as a dispatcher not sufficient
   - Eighth Circuit Court of Appeals Reversed holding, *inter alia*, that **"[t]he relevant inquiry focuses on the position [the plaintiff] *held when terminated*."** *Id.* at 1114 (emphasis added; citations omitted).

2. *Taylor v. Garrett*, 820 F. Supp. 933 (E.D.Pa. 1993)

   - Relied upon by the Eighth Circuit Court of Appeals in *Benson, supra.*
   - Plaintiff employed by the Navy as a "rigger worker"
   - Suffered back injury and became unable to perform essential functions of that position
   - Returned to work a year after injury in various "light-duty" positions (driver, messenger, receptionist, etc.)
   - Discharged while in light duty and sued under the Rehabilitation Act; Navy moved for partial summary judgment; motion denied

- The District Court stated the issue as follows: "whether a plaintiff asserting a claim of discrimination on the basis of handicap under the Rehabilitation Act must be qualified to perform the position for which he was originally hired or whether he need only be qualified for the light-duty positions to which he was reassigned after becoming handicapped." (820 F. Supp. at 933)

- "Even if . . . the Navy . . . had no duty to reassign [the plaintiff] to a light-duty position, certainly when an employee *has* been offered light-duty work – work that he must accept in order to maintain workers' compensation eligibility – and that employee challenges the conditions of, and the reasons for his separation from, such light-duty work, the relevant inquiry must be his qualifications to perform that work in which he was engaged when the alleged discrimination occurs." (*Id.* at 939; emphasis by the Court)

- "If one were to accept the Navy's rigid definition of the 'position in question', an employer who chose to reassign to light-duty work an employee who had become unable to perform his original job would have an unsettling 'carte blanche' power over that employee. During the course of the handicapped worker's light-duty employment, the employer would be able, without any sanction under the Rehabilitation Act, to harass that worker because of his handicap, fail reasonably to accommodate that worker's disability, or otherwise engage in handicap-based discrimination simply because the employee was not 'qualified' for a position that had nothing to do with his current work." (*Id.* at 939; footnote omitted)

*But see Browning v. Liberty Mutual Ins. Co.*, 178 F.3d 1043 (8th Cir. 1999)

- Plaintiff worked as a claims representative, a position which required repetitive motion from "heavy phone contact, computer keyboard work, and manual note taking" (*Id.* at 1046)

- Plaintiff developed "cubital tunnel syndrome" and was placed on a worker's-compensation leave (*Id.*)

- Following surgery, plaintiff was released with restrictions. The doctor's release to the plaintiff provided "no use of . . . right arm"; the release provided to the employer read "'minimal use of right arm'" (*Id.*)

- Plaintiff returned to work on May 30, 1995, and was assigned "a markedly reduced number of claims" but in her same position (*Id.*)

- The next day, the plaintiff's supervisor discovered the discrepancy between the two

releases and told the plaintiff to stay home until the discrepancy was resolved (*Id.*)

- Off work June 1, 1995 (*Id.*)

- Returned to work June 2, 1995, her last day at work (*Id.*)

- Plaintiff then experienced increased pain in her arm, called in sick over the next week, and told her doctor that she had quit her job, a message the doctor conveyed to the employer (Id. at 1046-1047)

- Terminated on June 9, 1995 for "job abandonment" (*Id.* at 1047)

- Sued under the ADA and FMLA

- Jury found for the plaintiff on her ADA claim

- Eighth Circuit Court of Appeals reversed, holding that she was not a qualified individual under the ADA at the time of her termination:

> "The job for which Browning must be qualified at the time of her discharge is not the temporary part-time position which she tried and failed to return to, but rather the job she held prior to her surgery."

*Id.* at 1048 (citation omitted).

***AMENDED 04-17-05***

**5.51C ADA - REASONABLE ACCOMMODATION**

**(SECOND CLAIM)**

The plaintiff's second claim is for a failure to provide reasonable accommodation to his disability. Your verdict must be for plaintiff and against defendant if all of the following elements have been proved by the greater weight of the evidence:

First, plaintiff had a disability as defined above; and

Second, defendant knew of plaintiff's disability; and

Third, plaintiff could have performed the essential functions of the Engineering Aide I position if the defendant had suspended the running of the 120-day Job Bank period until he acquired the additional training the defendant had recommended. In making this determination, you must consider whether the defendant acted in good faith in refusing to suspend the 120-day period.

Fourth, providing this accommodation would have been reasonable; and

Fifth, defendant failed to provide that accommodation.

If any of the above elements has not been proved by the greater weight of the evidence then your verdict must be for defendant on this claim.

**Additional Authority:**

**29 C.F.R. §1630.2**

(o) **Reasonable accommodation.**

(1) The term reasonable accommodation means:

(i) Modifications or adjustments to *a job application process* that enable a qualified applicant with a disability to be considered for the position such qualified applicant

> desires; or
>
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or
>
> (iii) . . .
>
> (2) Reasonable accommodation may include but is not limited to:
>
> (i) . . .
>
> (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; . . . ; *appropriate adjustment or modifications of* examinations, training materials, or *policies*; . . . ; and other similar accommodations for individuals with disabilities.

(Emphasis added.)

**Supplemental Authority:**

*Cravens v. Blue Cross and Blue Shield of Kansas*, 214 F.3d 1011, 1021 (8th Cir. 2000)

> "To establish that an employer failed to participate in an interactive process, a disabled employee must show: (1) the employer knew about the employee's disability; (2) the employee requested accommodation or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith."

*Id.* at 1021.

***ADDED 04-17-05***

**REASONABLE ACCOMMODATION DEFINED**

The term reasonable accommodation means:

(A) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

(B) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.

Reasonable accommodation may include but is not limited to job restructuring; part-time or modified work schedules; reassignment to a vacant position; appropriate adjustment or modifications of examinations, training materials, or policies; and other similar accommodations for individuals with disabilities.

**Authorities:**

**29 C.F.R. §1630.2**

**42 U.S.C. §12101(9)**

***AMENDED 04-17-05***

## 5.54 ACTUAL DAMAGES

If you find in favor of plaintiff on either of his two claims, then you must award plaintiff such sum as you find by the greater weight the evidence will fairly and justly compensate plaintiff for any damages you find plaintiff sustained as a direct result of his discharge. Plaintiff's claim for damages includes four distinct types of damages and you must consider them separately.

*First*, you must determine the amount of any wages and benefits plaintiff would have earned in his employment with defendant if he had not been discharged on November 3, 1999, but had continued to work through August 30, 2001 (the date he became permanently disabled as determined by the Veterans Administration). From that amount, you must deduct the amount of earnings that plaintiff received from other employment during that time.

*Second*, you must determine whether the plaintiff would have qualified for PERA disability benefits between September 1, 2001 and the date of your verdict and, if so, the amount of those benefits.

*Third*, you must determine the amount of future PERA benefits lost by the plaintiff from the date of your verdict onward, reduced to present value.

*Fourth*, you must determine the amount of any emotional distress sustained by plaintiff as a result of his termination of employment. Emotional distress includes past and future emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

You must enter separate amounts for each type of damages in the verdict form and must not include the same items in more than one category.

In making these determinations, you are instructed not to consider any worker's compensation or Veterans Administration benefits plaintiff might have received in the past or might receive in the future.

You are also instructed that plaintiff has a duty under the law to "mitigate" his damages--that is, to exercise reasonable diligence under the circumstances to minimize his damages. Therefore, if you find by the greater weight of the evidence that the defendant has proven that plaintiff failed to seek out or take advantage of an opportunity that was reasonably available to him, you must reduce his damages by the amount he reasonably could have avoided if he had sought out or taken advantage of such an opportunity.

**Authority:**

In addition to 5.54, see 42 U.S.C. §1981a (b)(3).

***ADDED 04-17-05***

**PRESENT VALUE OF PERA BENEFITS**

Plaintiff contends that, as a result of his termination on November 3, 1999, his inquiry into PERA disability benefits on January 14, 2003 was untimely, but would have been timely had he been allowed to work until August 31, 2001, when he was determined by the Veterans Administration to be permanently disabled from working. He contends that he would have received PERA disability benefits of $693 per month from September 1, 2001 onward and, on his 65th birthday, the same monthly payment in the form of retirement benefits. He further contends that, given his termination on November 3, 1999, he can retire on May 1, 2005, but will receive only $440 per month in retirement benefits, a difference of $253 per month. He is requesting that he be awarded this difference of $253 per month from May 1, 2005 through the date of his death. If you find that the plaintiff is entitled to the value of a future PERA benefits in the amount of $253 per month, you must reduce the sum of those monthly amounts to their present value.

You must reduce that amount to its present value by considering the interest that plaintiff can earn on the amount of the award if plaintiff makes a relatively risk-free investment. The reason you must make this reduction is because an award of an amount representing future loss of money is more valuable to plaintiff if he receives it today than if he receives it in monthly installments in the future. It is more valuable because plaintiff can earn interest on it for the period of time between the date of the award and the dates plaintiff would have received the money. Thus you should adjust the amount of any award for future loss of PERA benefits by the amount of interest that plaintiff can earn on that amount in the future.

**Authority:** Defendant's Proposed Instruction on "Present Value", modified to fit the evidence received and the nature of the future losses the plaintiff seeks to recover.

***AMENDED 04-17-05***

**5. EMPLOYMENT CASES - ELEMENT AND DAMAGE INSTRUCTIONS**
**5.05 TITLE VII - DISPARATE TREATMENT - VERDICT FORM**

**VERDICT**

**Note:** Complete the following paragraph by writing in the name required by your verdict.

**1. First Claim.** On the plaintiff's first claim for discriminatory discharge as described in Instruction ____, we find in favor of:

______________________________________________________________

(Plaintiff Robert Murphey) or (Defendant City of Minneapolis)

**Note:** Answer the next question only if the your finding in No. 1 is in favor of plaintiff. If your answer to No. 1 is in favor of the defendant, proceed to No. 2.

**1a.** Would the defendant have discharged plaintiff at the time it did regardless of his disability?

______Yes _______No
(Mark an "X" in the appropriate space)

**2. Second Claim.** On the plaintiff's second claim for failure to provide reasonable accommodation as described in Instruction ____, we find in favor of:

______________________________________________________________

(Plaintiff Robert Murphey) or (Defendant City of Minneapolis)

**Note:** Answer the next question only if the your finding in No. 2 is in favor of plaintiff.

**2a.** Would the defendant have discharged plaintiff at the time it did regardless of its failure to provide reasonable accommodation?

______Yes _______No
(Mark an "X" in the appropriate space)

**Note:** If you answer “no” to No. 1a or No. 2a, above, then complete the following items. Otherwise, have your foreperson sign and date this form because you have completed your deliberations on this claim.

**Past Wage Loss.** We find plaintiff's lost wages and employment benefits through the date of this verdict to be:

$________________ (stating the amount or, if none, write the word "none").

**Past PERA Disability Benefits.** We find plaintiff’s lost PERA disability benefits through the date of this verdict to be:

$_________________ (stating the amount or, if none, write the word "none").

**Present Value of Future PERA Benefits.** We find plaintiff’s lost disability and retirement PERA benefits from the date of trial onward, reduced to present value, to be:

$__________________ (stating the amount or, if none, write the word "none").

**Emotional Distress.** We find that plaintiff should be awarded damages for past and future emotional distress in the following amount:

$__________________ (stating the amount, or if none, write the word “none”).

__________________________________________

Foreperson

Dated: ________________________