**COURT'S INSTRUCTIONS TO THE JURY 01CV10 (JNE/JGL)**

**INSTRUCTION NO. 1**

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. It is your duty to follow the law as I will state it and to apply it to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law, but consider the instructions as a whole. You are not to be concerned about the wisdom of any rule of law stated by me. You must follow and apply the law.

The lawyers have properly referred to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and as stated in these instructions, you are governed by my instructions.

Nothing I say in these instructions indicates that I have any opinion about the facts. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

**INSTRUCTION NO. 2**

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

**INSTRUCTION NO. 3**

If a lawyer asks a witness a question that contains an assertion of fact, you may not consider the assertion as evidence of that fact. The lawyer's questions and statements are not evidence.

**INSTRUCTION NO. 4**

You may use the notes taken by you during the trial. However, the notes should not be substituted for your memory. Remember, notes are not evidence. If your memory should differ from your notes, then you should rely on your memory and not on your notes.

**INSTRUCTION NO. 5**

When I instruct you that a party has the burden of proof on any proposition, or use the expression "if you find," or "if you decide," I mean that you must be persuaded, considering all the evidence in the case that the proposition is more probably true than not.

## INSTRUCTION NO. 6

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

**INSTRUCTION NO. 7**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

**INSTRUCTION NO. 8**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

**INSTRUCTION NO. 9**

Plaintiff, Robert K. Murphey, has the burden in a civil action, such as this, to prove every essential element of his claim by a preponderance of the evidence. If Mr. Murhpey should fail to establish any essential element of his claim by a preponderance of the evidence, you should find for the defendant City of Minneapolis as to that claim.

The City of Minneapolis has the burden of establishing the essential elements of its affirmative defenses by a preponderance of the evidence.

"Establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

**INSTRUCTION NO. 10**
**DISPARATE TREATMENT**

Under the Americans with Disabilities Act of 1990 (ADA), it is unlawful for an employer to discharge or otherwise discriminate against an employee because of that employee's disability if the employee is qualified to do the job with reasonable accommodation.

Mr. Murphey claims that the City of Minneapolis violated the ADA by discharging him because he was disabled. The City of Minneapolis denies that it discriminated against Mr. Murphey in any way.

Your verdict must be for Mr. Murphey and against the City of Minneapolis on this claim if you find that Mr. Murphey has proved the following essential elements by the preponderance of the evidence:

*First*, Mr. Murphey had an impairment; and

*Second*, such impairment substantially limited Mr. Murphey's ability to perform a major life activity;

*Third*, the City of Minneapolis discharged Mr. Murphey;

*Fourth*, Mr. Murphey could have performed the essential functions of his job, with or without reasonable accommodation, at the time the City of Minneapolis discharged him;

*Fifth*, the City of Minneapolis knew of Mr. Murphey's impairment and Mr. Murphey's impairment was a motivating factor in the City of Minneapolis' decision to discharge him.

If any of the above elements has not been proved by the preponderance of the evidence, then your verdict must be for the City of Minneapolis on this claim.

**INSTRUCTION NO. 11**
**REASONABLE ACCOMMODATION**

Your verdict must be for Mr. Murphey and against the City of Minneapolis on this claim if you find that Mr. Murphey has proved the following essential elements by the preponderance of the evidence:

*First*, Mr. Murphey had an impairment; and

*Second*, such impairment substantially limited Mr. Murphey's ability to perform a major life activity; and

*Third*, the City of Minneapolis knew of Mr. Murphey's impairment; and

*Fourth*, Mr. Murphey was a qualified individual with a disability and could have performed the essential functions of his job with a reasonable accommodation;

*Fifth,* providing an accommodation would have been reasonable; and

*Sixth*, the City of Minneapolis failed to provide any reasonable accommodation.

If any of the above elements has not been proved by the preponderance of the evidence, then your verdict must be for the City of Minneapolis on this claim.

**INSTRUCTION NO. 12**

The term "qualified individual with a disability" means an individual with a disability who: (1) with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires; and (2) is otherwise qualified for the position.

**INSTRUCTION NO. 13**

The term "otherwise qualified for the position" means that Mr. Murphey must have the requisite skill, expertise, education, and other job-related requirements of the employment position(s) in question.

**INSTRUCTION NO. 14**

The phrase "substantially limits" as used in these instructions means an individual is significantly restricted in his or her ability to perform a major life activity.

In determining whether Mr. Murphey's impairment substantially limited his ability to perform a major life activity, you should compare his ability to perform the major life activity with that of the average person. In doing so, you should also consider: (1) the nature and severity of the impairment; (2) how long the impairment will last or is expected to last; and (3) the permanent or long-term impact, or expected impact, of the impairment.

It is not the name of the impairment or a condition that matters, but rather the effect of an impairment or condition on the life a particular person.

**INSTRUCTION NO. 15**

"Major activities of life" or "major life activities" include such activities as caring for oneself, performing manual tasks, walking, sitting, standing, lifting, reaching, learning, or working. An impairment that limits the "major life activity" of working must significantly restrict the plaintiff's ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and abilities. The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working.

**INSTRUCTION NO. 16**

In determining whether a job function is essential, you should consider the following factors: (1) the employer's judgment as to which functions of the job are essential; (2) written job descriptions; (3) the amount of time spent on the job performing the function in question; (4) consequences of not requiring the person to perform the function; (5) the work experience of persons who have held the job; (6) the current work experience of persons in similar jobs; (7) whether the reason the position exists is to perform the function; (8) whether there are a limited number of employees available among whom the performance of the function can be distributed; and (9) whether the function is highly specialized and the individual in the position was hired for his or her expertise or ability to perform the function.

No one factor is necessarily controlling. You should consider all of the evidence in deciding whether a job function is essential.

The term "essential functions" means the fundamental job duties of the employment position Mr. Murphey held at the time of his discharge or which he desired. The term "essential functions" does not include the marginal functions of the position.

## INSTRUCTION NO. 17

As used in these instructions, plaintiff's disability was a "motivating factor," if plaintiff's disability played a part in the defendant's decision to discharge plaintiff. However, plaintiff's disability need not have been the only reason for defendant's decision to discharge plaintiff.

**INSTRUCTION NO. 18**

The term "reasonable accommodation" means making modifications to the work place that allows a person with a disability to perform the essential functions of the job or allows a person with a disability to enjoy the same benefits as an employee without a disability.

The term "reasonable accommodation" does not include efforts that would cause an undue hardship on the City of Minneapolis.

Reassignment may constitute a reasonable accommodation under certain circumstances, but the City of Minneapolis is not required to create or re-establish a job where one would otherwise not exist. In addition, the City of Minneapolis is not required to promote an employee with a disability as an accommodation.

To show that lateral reassignment to another job would have been a reasonable accommodations, Mr. Murphey must prove that the job was vacant or available and that Mr. Murphey was qualified for the vacant job to which Mr. Murphey requested reassignment.

The fact that the City of Minneapolis may have offered certain accommodation to Mr. Murphey in the past, as a temporary experiment or as an act of compassion toward the employee does not mean that the same accommodations must be forever extended to Mr. Murphey as a matter of law, or that those accommodations are necessarily reasonable under the ADA. Otherwise, an employer would be reluctant to offer benefits or concessions to disabled employees for fear that, by once providing the benefit or concession, the employer would forever be required to provide that accommodation.

The fact that an accommodation that Mr. Murphey argues for has been provided by the City of Minneapolis in the past to Mr. Murphey, or to another disabled employee, does not necessarily mean that the particular accommodation is a reasonable one. Instead, you must determine its reasonableness under all the evidence in the case.

Reallocation of marginal job duties can sometimes constitute a reasonable accommodation. However, the City of Minneapolis does not have to transfer any of Mr. Murphey's essential job duties to another employee to perform. Essential job duties are those duties that the person holding the job would have to perform in order to be considered qualified for the position.

If you conclude that Mr. Murphey, in effect, is arguing that another employee should have been required to perform an essential function or functions of his job, then the accommodation that Mr. Murphey sought was not a reasonable accommodation.

If, however, Mr. Murphey only sought the reallocation of marginal job duties to another employee, and if you further find that it would have been reasonable for the employer to require another employee to perform these marginal duties without imposing an excessive burden on the employer or that employee, then you may conclude that the specified accommodation was a reasonable one.

**INSTRUCTION NO. 19**

You should be mindful that the law applicable to this case requires only that an employer not discriminate against an employee because of the employee's disability.

The City of Minneapolis may discharge or otherwise adversely affect an employee, including Mr. Murphey, for any other reason, good or bad, fair or unfair, and you must not second guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of the City of Minneapolis even though you personally may not approve of the action taken and would have acted differently under the circumstances.

**INSTRUCTION NO. 20**

If you find that the City of Minneapolis discriminated against Mr. Murphey based on disability, then you must determine an amount that is fair compensation for Mr. Murphey's damages. You may award compensatory damages only for injuries that Mr. Murphey proves were caused by the City of Minneapolis' allegedly wrongful conduct.

The damages that you award must be fair compensation—no more and no less.

You may award damages for any pain, suffering or mental anguish that Mr. Murphey experienced or may experience as a consequence of the City of Minneapolis' discharge of Mr. Murphey. No evidence of monetary value of such intangible things as pain and suffering need be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that Mr. Murphey prove the amount of his losses with mathematical precision, but only as much definiteness and accuracy as circumstances permit.

**INSTRUCTION NO. 21**

If you determine defendant the City of Minneapolis discriminated against Mr. Murphey in discharging him, then you must determine the amount of damages that defendant's actions have caused Mr. Murphey.

You may award as actual damages an amount that reasonably compensates Mr. Murphey for any lost wages and benefits that Mr. Murphey would have received had Mr. Murphey not been discharged on November 3, 1999, but had continued working until August 31, 2001 (the date he became disabled from working as determined by the Veterans Administration).

In making these determinations, you are not to consider any Workers Compensation or Veterans Administration benefits Mr. Murphey might have received in the past or might receive in the future.

**INSTRUCTION NO. 22**

In addition, you may award as actual damages an amount that reasonably compensates Mr. Murphey for any lost PERA benefits for which Mr. Murphey would have qualified between September 1, 2001 and the date of your verdict, as well as the amount of future PERA benefits lost by Mr. Murphey from the date of your verdict onward, reduced to present value.

The reason you must make a reduction to present value for future PERA benefits is because an award of an amount representing a future loss is more valuable to Mr. Murphey if Mr. Murphey receives it today than if Mr. Murphey received it in the future. It is more valuable because Mr. Murphey can earn interest on it for the period of time between the date of the award and the date Mr. Murphey would have received the money. Thus you should adjust the amount of any award for future loss of PERA benefits by the amount of interest that Mr. Murphey can earn on that amount in the future.

**INSTRUCTION NO. 23**

The Court has judicially noticed and received into evidence a Life Expectancy Table that may be considered by you in determining how long Mr. Murphey may be expected to live.

Life expectancy, as shown by that table, is merely an estimate of the probable average remaining length of life of all persons in the United States of a given age. That estimate is based upon a limited record of experience. The inference that may reasonably be drawn from life expectancy as shown by the table applies only to one who has the average health and exposure to danger of people of that age.

In determining the reasonably certain life expectancy of Mr. Murphey, you should consider, in addition to what is shown by the mortality table, all other facts and circumstances in evidence in the case bearing upon the life expectancy of Mr. Murphey, including his occupation, habits, past health record and present state of health.

**INSTRUCTION NO. 24**

Mr. Murphey must make every reasonable effort to minimize or reduce his damages for loss of compensation by seeking employment. This is referred to as "mitigation of damages." The City of Minneapolis must prove by a preponderance of the evidence that Mr. Murphey failed to mitigate his damages for loss of compensation.

If you determine Mr. Murphey is entitled to damages, you must reduce these damages by

1. What Mr. Murphey earned, and
2. What Mr. Murphey could have earned by reasonable effort during the period from Mr. Murphey's discharge until the date of trial.

Mr. Murphey must accept employment that is "of a like nature." In determining whether employment is "of a like nature," you may consider

1. The type of work,
2. The hours worked,
3. The compensation,
4. The job security,
5. The working conditions, and
6. Other conditions of employment.

You must decide whether Mr. Murphey acted reasonably in not seeking or accepting a particular job. If you determine Mr. Murphey did not make reasonable efforts to obtain another similar job, you must decide whether any damages resulted from Mr. Murphey's failure to do so.

You must not compensate Mr. Murphey for any portion of Mr. Murphey's damages resulting from Mr. Murphey's failure to make reasonable efforts to reduce his damages.

**INSTRUCTION NO. 25**

You must follow the following rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone--including me--how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law that I have given to you in my instructions. The verdict must be unanimous. Nothing I have

said or done is intended to suggest what your verdict should be--that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case. [*The form reads: [quote]*]. You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the marshal that you are ready to return to the courtroom.